1

2

3

4

5

6

7

8                         **IN THE UNITED STATES DISTRICT COURT**

9                      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JOHN GILBERT MENDOZA,                        No.  2:22-CV-1136-DMC-P

12                    Plaintiff,

13          v.                                     ORDER

14   G. MATTESON, et al.,

15                    Defendants.

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint.  See ECF No. 1.

19          The Court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

21   § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22   malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23   from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24   the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

25   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This

26   means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d

27   1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the

28   complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

                                                    1

1   rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege

2   with at least some degree of particularity overt acts by specific defendants which support the

3   claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

4   impossible for the Court to conduct the screening required by law when the allegations are vague

5   and conclusory.

6

7                              **I.  PLAINTIFF'S ALLEGATIONS**

8          Plaintiff names the following as defendants: (1) G. Matteson, Warden; (2) T.

9   Tyler, Chief Deputy Warden; (3) Popovits, Chief Deputy Warden; (4) Martinez, Lieutenant; (5)

10  S. Deberry, Correctional Officer; (6) Stewart, Correctional Officer; (7) Peterson, Correctional

11  Officer; (8) Buckner, Correctional Officer; (9) Khim, Correctional Officer; (10) Burns,

12  Correctional Officer; and (11) Muhammed, Sergeant.  See ECF No. 1, pgs. 3-4.  All named

13  Defendants were employed at Solano State Prison, where the alleged violations occurred.  See id.

14  Plaintiff does not indicate whether the named Defendants are being sued in their individual or

15  official capacity.  See id.  Plaintiff alleges six claims for relief.  See generally id. at 5-14.  At

16  times, Plaintiff's allegations are rambling and difficult to decipher as Plaintiff provides irrelevant

17  factual allegations.  The facts alleged appear to indicate allegations by Plaintiff of various

18  violations of the First, Eighth, and Fourteenth Amendments.  See id.

19                    Telephones

20         Generally, Plaintiff alleges that his freedom to communicate with family members

21  was restricted because Defendant Deberry denied Plaintiff access to the phones.  See id. pg. 5.

22  Plaintiff states Defendant Deberry said it is "under his discretion to limit phone access even if

23  there are two hundred (200) capable phone time slots available."  Id.  Plaintiff contends he was

24  afraid to exercise his rights because Defendant Deberry threatened Plaintiff with disciplinary

25  action and Plaintiff was concerned it would "influence a denial of parole at parole suitability

26  hearings."  Id.  As a result, Plaintiff contends he was denied his right to freedom of speech and

27  was treated differently from other inmates, violating due process protections. See id. at 5-6.

28  / / /

1    Mail

2         Further, Plaintiff alleges that on December 16, 2020, Defendant Deberry violated

3    Plaintiff's First Amendment right to mail because Defendant Deberry refused to process

4    Plaintiff's legal mail to Senator Nancy Skinner as confidential.  See id. at 7.  As a result, Plaintiff

5    "could not correspond with lawmakers regarding conditions of confinement and pending

6    legislation" until a later date.  Id.

7         Cleaning Supplies

8         According to Plaintiff, on November 13, 2020, Defendant Stewart and Defendant

9    Peterson denied Plaintiff's right to equal access to cleaning supplies under Defendant Buckner's

10   order.  Id. at 8.  Plaintiff contends Defendant Khim and Defendant Stewart told Plaintiff that

11   officers "can take [cleaning supplies] away because it's a privilege" and another inmate caused

12   the right to be revoked.  Id.  Plaintiff asked Defendant Burns why he was being punished for

13   another inmate's actions and Defendant Burns responded with: "It's Buckner's trip . . . you know

14   how it is."  Id. at 9.  Plaintiff contends his wife emailed Defendant Matteson, the prison Warden,

15   and Plaintiff filed a staff complaint, which Defendant Matteson rejected.  See id.  Plaintiff claims

16   that as a result, he contracted Covid-19 and "suffered extreme anxiety and fear for his safety as

17   staff acted with deliberate indifference to his health."  Id. at 8.

18        Social Distancing

19        Next, Plaintiff alleges that from November 2020 to June 2022 he was denied the

20   right to socially distance himself six feet from other inmates because Defendant Matteson formed

21   cohorts that were considered "safe zones" within dormitories, but Defendant Matteson permitted

22   transfers of inmates between zones.  Id. at 10.  Plaintiff contends that, as a result of the transfers,

23   on December 25, 2020, and January 4, 2021, inmates from Covid-19 dormitories were transferred

24   into Plaintiff's safe zone without quarantining prior to the transfer and that Plaintiff tested

25   positive for Covid-19 on January 5, 2021. See id. at 11.

26   / / /

27   / / /

28   / / /

1  Cell Conditions

2  Plaintiff also claims that, because he tested positive for Covid-19, he was

3  transferred to a Covid-19 unit where he was subject to an HVAC unit blowing cold air on him,

4  and that "[t]wo blankets were insufficient to keep warm causing Plaintiff to shake and shiver."

5  Id. at 11-12.  Plaintiff further alleges that Defendant Muhammed "refused to assist the situation."

6  Id.  Further, Plaintiff alleges there was an inadequate supply of hot water in the showers and

7  overall unequal access to health care that is provided to society.  Id. at 12-14.  Plaintiff alleges he

8  consequently suffered from sleep deprivation, mental health declination, partial loss of taste,

9  majority loss of smell, mind fog, and anxiety surrounding Covid-19 because of Defendant

10  Matteson's "lack of concern for human dignity and health."  Id. at 12-13.

11

12  **II.  DISCUSSION**

13  In considering whether a complaint states a claim, the Court must accept all

14  allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94

15  (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.

16  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v.

17  Scherer, 468 U.S. 183 (1984); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740

18  (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or

19  doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411,

20  421 (1969).  However, legally conclusory statements, not supported by actual factual allegations,

21  need not be accepted.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).  In addition, pro se

22  pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v.

23  Kerner, 404 U.S. 519, 520 (1972).

24  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

25  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

26  notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

27  550 U.S. 544, 555 (2007) (citation omitted).  However, in order to survive dismissal for failure to

28  state a claim, a complaint must contain more than "a formulaic recitation of the elements of a

cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  The mere possibility of misconduct will not suffice to meet this standard.  See id. at 679.

Consistent with these standards, the Court identifies the following legal theories implicated by the facts alleged: (1) denial of freedom of speech; (2) retaliation; (3) interference with legal mail; (4) equal protection claims; and (5) conditions of confinement claims.  The Court below discusses each category of legal theories, as well as various pleading defects with respect to the individual defendants named.

### A.      <u>Freedom of Speech</u>

The Ninth Circuit has held that "[p]risoners have a First Amendment right to telephone access, subject to reasonable security limitations."  Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (citing Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)), amended by 135 F.3d 1318 (9th Cir. 1998); see also Johnson v. California, 207 F.3d 650, 656 (9th Cr. 2000) (per curiam) (concluding no right to a specific phone rate).  The Ninth Circuit revisited the issue of an inmate's right to telephone access in Valdez v. Rosenbaum, 302 F.3d 1039 (9th Cir. 2022), cert. denied, 538 U.S. 1047, 123 S. Ct. 2110, 155 L.Ed.2d 1087 (2003).  In Valdez, the plaintiff argued that restricting their telephone access violated their rights to due process and freedom of speech.  The Ninth Circuit found that previous assertions in dicta of a First Amendment right to telephone access failed to identify the source of such a right.  Id. at 1047-48.

The Supreme Court has concluded that the First Amendment right at issue, regarding telephone access, is the "right to communicate with persons outside prison walls" and that use of a telephone is "merely one means of exercising this right."  Id. at 1048.  In applying the four-factor test of Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 65 (1986), the

1   Court held that the restriction on the plaintiff's telephone access did not violate the First

2   Amendment.  Id. at 1049; see Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)

3   (holding that an inmate's right to communicate is subject to rational limitations in the face of

4   legitimate security interests).  Therefore, to state a First Amendment constitutional claim, a

5   plaintiff must allege that the use of a phone is connected to another constitutional right, such as

6   the right to access the courts or free speech.  See Rodriguez v. Newsom, No. 1:20-cv-01782-

7   GSA-PC, 2022 WL 783722, at *3.  "Even then, a telephone is only one means for an inmate to

8   exercise the extremely limited First Amendment right to communicate with persons outside of the

9   jail. The same right may be met through other means such as mail correspondence or personal

10  visits." Id. (holding plaintiff's allegation of entitlement to use a phone under California Code of

11  Regulations Title 15 Section 3282(d) to talk to family did not qualify as a constitutional claim).

12          While Plaintiff alleges Defendant, Correctional Officer Deberry, denied

13  "[P]laintiff access to the telephone per Title 15 § 3044(d)(2)(D)," the Court does not find that a

14  claim for a First Amendment violation exists.  The Ninth Circuit recognizes that the telephone is

15  only one means of exercising the First Amendment right to communicate with persons outside the

16  jail.  Because Plaintiff does not claim other means of communication were restricted, Plaintiff

17  fails to state a First Amendment claim for being denied the use of a telephone.  Plaintiff will be

18  provided with the opportunity to amend to demonstrate whether any other means of

19  communication with persons outside the jail may have been restricted.

20          **B.**     **Retaliation**

21          In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

22  establish that he was retaliated against for exercising a constitutional right, and that the retaliatory

23  action was not related to a legitimate penological purpose, such as preserving institutional

24  security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting

25  this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the

26  exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995);

27  Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also

28  show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by

the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

In Claim I, Plaintiff alleges that Defendant Deberry retaliated against Plaintiff by restricting Plaintiff's access to the telephones.  See ECF No. 1, pg. 5.  The Court does not find Plaintiff's allegations qualify as a viable retaliation claim.  Plaintiff alleges Defendant Deberry took adverse action against Plaintiff by restricting telephone use, but Plaintiff does not allege facts that the adverse action take was because Plaintiff engaged in protected conduct.  Further, Plaintiff fails to allege how the conduct chilled Plaintiff's First Amendment rights because, as discussed above, Plaintiff had other means to communicate with family members.  Lastly, Plaintiff does not allege any facts that Defendant Deberry's actions did not serve a penological purpose.  For these reasons, the Court does not find Plaintiff asserted a retaliation claim and will provide an opportunity for Plaintiff to amend the Complaint.

### C. **Legal Mail**

Prisoners have a First Amendment right to send and receive mail.  See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  Prison officials may intercept and censor outgoing mail concerning escape plans, proposed criminal activity, or encoded messages.  See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266.  Based on security concerns, officials may also prohibit correspondence between inmates.  See Turner v. Safley, 482 U.S. 78, 93 (1987).  Prison officials may not, however, review outgoing legal mail for legal sufficiency before sending them to the court.  See Ex Parte Hull, 312 U.S. 546, 549 (1941).  Incoming mail from the courts, as opposed to mail from the prisoner's attorney, for example, is not considered "legal mail."  See Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

/ / /

Specific restrictions on prisoner legal mail have been approved by the Supreme

Court and Ninth Circuit.  For example, prison officials may require that mail from attorneys be

identified as such and open such mail in the presence of the prisoner for visual inspection.  See

Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Sherman v. MacDougall, 656 F.2d 527, 528

(9th Cir. 1981).  Whether legal mail may be opened outside the inmate's presence, however, is an

open question in the Ninth Circuit.  See Sherman, 656 F.2d at 528; cf. Mann v. Adams, 846 F.2d

589, 590-91 (9th Cir. 1988) (per curiam) (concluding mail from public agencies, public officials,

civil rights groups, and news media may be opened outside the prisoner's presence in light of

security concerns).  At least three other circuits have concluded that legal mail may not be opened

outside the inmate's presence.  See id. (citing Taylor v. Sterrett, 532 F.2d 462 (5th Cir. 1976),

Back v. Illinois, 504 F.2d 1100 (7th Cir. 1974) (per curiam), and Smith v. Robbins, 452 F.2d 696

(1st Cir. 1972)); see also Samonte v. Maglinti, 2007 WL 1963697 (D. Hawai'i July 3, 2007)

(recognizing open question).

Confidential correspondence between a prisoner and his attorney is protected by

the Sixth Amendment.  See Nordstrom v. Ryan, 762 F.3d 903, 909 (9th Cir. 2014) ("What prison

officials don't have the right to do is read a confidential letter from an inmate to his lawyer.").

This protection, however, does not extend to correspondence with government agencies.  O'Keefe

v. Van Boening, 82 F.3d 322, 326 (9th Cir. 1996) (upholding prison policy including reviewing

inmate correspondence with government officials, stating "Regulating correspondence between

prisoners and government agencies can serve to prevent criminal activity and maintain prison

security"); Hamilton v. Department of Corrections, 43 F.App'x 107 (9th Cir. 2002) (unreported)

("Although Hamilton may have a right to correspond confidentially with an FBI agent under

California Law, see Cal. Code Regs. Tit. 15, § 3141(a) & (c)(2) (inmates may correspond

confidentially with federal officials appointed by the President of the United States, and their staff

members), no such federal constitutional right exists"); Grigsby v. Horel, 2008 WL 11422633, at

*2 (N.D. Cal., Apr. 28, 2008); aff'd 341 F.App'x 314 (9th Cir. 2009) ("The cited incoming mail

from the Commission on Judicial Performance, Del Norte County Superior Court and the State

Bar of California is not material because it was not 'legal mail.'"); Williams v. Simon, 2018 WL

8

1585785, at *4 (D. Or. Mar. 30, 2018) ("A prison need not treat all mail sent to government officials as legal mail.").

Here, Plaintiff alleges that Defendant, Correctional Officer Deberry, refused to process mail addressed to Senator Nancy Skinner as confidential mail as required by Title 15 of the California Code of Regulations.  See ECF No. 1, pg. 7.  Plaintiff alleges that under state regulations, the outgoing mail to Senator Skinner should have been treated as confidential mail and that failure to do so resulted in the letter being processed at a later date, impacting Plaintiff's ability to correspond about recent legislation.  Id.

The mail Plaintiff references in the complaint does not qualify as "legal mail" entitled to federal constitutional protections because Plaintiff's correspondence was to a Senator, not Plaintiff's legal counsel.  See Kakowski v. County of Sacramento, No. 2:16-cv-2549-JAM-AC-P, 2019 WL 3253919, at *3 ("Under federal law, 'legal mail' entitled to First Amendment protection is narrowly defined as confidential correspondence between a prisoner and his attorney").  Moreover, the conduct Plaintiff complains of does not include the reading of Plaintiff's mail by prison officials but the failure of Defendant Deberry to adhere to the specific requirements set forth in California Code of Regulations Title 15, Section 3141(c)(1).  "The violation of state prison regulations does not itself establish a federal constitutional violation."  Hammler v. Haas, No. 2:15-cv-2266-JAM-AC-P, 2019 WL 2285071, at *2.  For these reasons, the Court finds no merit to Plaintiff's First Amendment legal mail allegation.  Plaintiff will be provided an opportunity to amend to explain how the correspondence constitutes legal mail entitled to federal constitutional protection.

**D.    Equal Protection Clause**

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose.  See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  Prisoners are protected from invidious discrimination based on race.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline.  See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam).  Prisoners are also

9

1  protected from intentional discrimination on the basis of their religion.  See Freeman v. Arpaio,

2  125 F.3d 732, 737 (9th Cir. 1997).  Equal protection claims are not necessarily limited to racial

3  and religious discrimination.  See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir.

4  2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the

5  disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal.

6  2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals

7  where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069

8  (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

9         In order to state a § 1983 claim based on a violation of the Equal Protection Clause

10 of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional

11 discrimination against plaintiff, or against a class of inmates which included plaintiff, and that

12 such conduct did not relate to a legitimate penological purpose.  See Village of Willowbrook v.

13 Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class

14 of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v.

15 Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940

16 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

17        The Court finds Plaintiff raises violation of the Equal Protection Clause for two

18 claims: (1) Access to Telephone; and (2) Access to Cleaning Supplies.

19              1.     Access to Telephone

20        In Claim II, Plaintiff alleges Defendant Deberry violated the Equal Protection

21 Clause of the Fourteenth Amendment by restricting Plaintiff's access to the telephones, treating

22 Plaintiff "differently than other inmates [or] humans in same situation."  ECF No. 1, pg. 6 (errors

23 in original).  Plaintiff's allegations do not satisfy the requirement to be protected under the Equal

24 Protection Clause of the Fourteenth Amendment.  To state a cognizable Equal Protection claim,

25 Plaintiff must show that they are part of a protected class and because they are a member of a

26 protected class, Plaintiff is being discriminated against.  While Plaintiff contends they were

27 treated differently than other inmates, the Court does not find Plaintiff made any allegations of

28 how Plaintiff is part of a protected class nor demonstrated a causal link between being a member

10

1  of a protected class and the telephone restriction.  Because Plaintiff has not alleged facts to

2  support a finding of discrimination on a protected class, Plaintiff fails to state a claim for violation

3  of the Equal Protection Clause and will be provided an opportunity to amend.

4       2.  Access to Cleaning Supplies

5      Plaintiff alleges an Equal Protection Clause violation when Defendants Stewart,

6  Peterson, Buckner, Deberry, and Khim restricted Plaintiff's access to cleaning supplies.  See ECF

7  No. 1, pgs. 8-9.  Specifically, "Plaintiff was denied equal access to supplies provided to the entire

8  institution" and that such restriction applied to Plaintiff's housing unit.  Id.  However, housing

9  units do not constitute a protected class for protection under the Equal Protection Clause.  Thus,

10  for the same reasons provided above, the Court does not find Plaintiff's allegations state a

11  cognizable Equal Protection claim and will provide Plaintiff an opportunity to amend.

12    **E.**  **Due Process**

13      The Due Process Clause protects prisoners from being deprived of life, liberty, or

14  property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to

15  state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or

16  property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672

17  (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the

18  deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd.

19  of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are

20  defined, by existing rules that stem from an independent source – such as state law – and which

21  secure certain benefits and support claims of entitlement to those benefits.  See id.

22      Liberty interests can arise both from the Constitution and from state law.  See

23  Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976);

24  Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution

25  itself protects a liberty interest, the court should consider whether the practice in question ". . . is

26  within the normal limits or range of custody which the conviction has authorized the State to

27  impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the

28  Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time

1   credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner,

2   515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308,

3   323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in

4   remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

5          In determining whether state law confers a liberty interest, the Supreme Court has

6   adopted an approach in which the existence of a liberty interest is determined by focusing on the

7   nature of the deprivation.  See Sandin v. Connor, 515 U.S. 472, 481-84 (1995).  In doing so, the

8   Court has held that state law creates a liberty interest deserving of protection only where the

9   deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the

10  sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the

11  ordinary incidents of prison life."  Id. at 483-84.  Prisoners in California have a liberty interest in

12  the procedures used in prison disciplinary hearings where a successful claim would not

13  necessarily shorten the prisoner's sentence.  See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th

14  Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not

15  result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v.

16  Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate

17  release from prison were cognizable under § 1983).

18         Where a prisoner alleges the deprivation of a liberty or property interest caused by

19  the random and unauthorized action of a prison official, there is no claim cognizable under 42

20  U.S.C. § 1983 if the state provides an adequate post-deprivation remedy.  See Zinermon v. Burch,

21  494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A state's post-

22  deprivation remedy may be adequate even though it does not provide relief identical to that

23  available under § 1983.  See Hudson, 468 U.S. at 531 n.11.  A due process claim is not barred,

24  however, where the deprivation is foreseeable and the state can therefore be reasonably expected

25  to make pre-deprivation process available.  See Zinermon, 494 U.S. at 136-39.  An available

26  state common law tort claim procedure to recover the value of property is an adequate remedy.

27  See id. at 128-29.

28  / / /

Plaintiff's Complaint alleges a due process violation for two claims: (1) Access to Telephone; and (2) Medical Treatment.

### 1. Access to Telephone

The Ninth Circuit addressed the issue of an inmate's due process rights regarding telephone access in Valdez, 302 F.3d 1039 (9th Cir. 2022).  The court held that there is no constitutionally protected liberty interest in access to a telephone and no procedural due process violation where the applicable state law merely mandated "reasonable access to a telephone" and gave prison officials discretion to determine what access constituted reasonable access.  Id. at 1045.  Additionally, the court held there was no substantive violation since the restriction on the detainee's telephone access did not amount to impermissible punishment.  Id. at 1045-47.  Further, the Ninth Circuit clarified that where the plaintiff alleges the restriction "interfered with [their] access to family and friends, plaintiff allegations are not cognizable under the due process clause."  Harrell v. Solano County Jail, et al., No. 2:14-cv-01592-AC-P, 2015 WL 5813700 (citing Wilkins v. Alameda Cnty., No. C 14-2516 LHK (PR), 2014 WL 5035445, at *1 (N.D. Cal. Oct. 7, 2014) (plaintiff's allegations the telephone system at the jail failed to state a cognizable claim under the due process clause, where plaintiff alleged only that the system interfered with his telephone communication with family and friends rather than his access to the courts.).

The facts alleged in Plaintiff's complaint do not demonstrate a due process violation.  Plaintiff does not claim to have been restricted in their right to access to the courts.  Rather, Plaintiff states to have been restricted in "access to communication with his family."  ECF No. 1, pg. 5.  Since the Ninth Circuit does not recognize an interference to family as a cognizable due process claim, this Court finds the same here.  Plaintiff will have the opportunity to amend.

### 2. Medical Treatment

"The Due Process Clause requires, at least, that 'persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs.'"  Cabral v. Cnty. of Glenn, 624 F. Supp.2d 1184, 1190 (9th Cir. 2009) (quoting Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996)).  Officials are "deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment."

1    Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003) (quoting Hallett v. Morgan, 296

2    F.3d 732, 744 (9th Cir. 2002) (finding liability under § 1983 where officers were aware that

3    detainee was a Type I diabetic but failed to provide medically necessary food or insulin).

4           Claim VI in Plaintiff's Complaint asserts a due process violation existed when

5    medical staff and Defendant, Sargent Muhammed, failed to act when Plaintiff was placed under

6    an HVAC unit while recovering from Covid-19.  ECF No. 1, pgs. 11-12.  Further, Plaintiff asserts

7    the shower water was cold, only allowing enough hot water for two individuals.  Id.  While

8    Plaintiff alleges Defendant Muhammed delayed in turning off the HVAC unit and does not allege

9    the hot water was repaired, Plaintiff fails to demonstrate how these events interfered with

10    Plaintiff's medical treatment of Covid-19, other than leading to deterioration of Plaintiff's mental

11    health.  See Id. pg. 12.  Plaintiff must allege how these failures to act impacted Plaintiff's medical

12    treatment of Covid-19.  Therefore, Plaintiff will have an opportunity to amend.

13        **F.**     **Conditions of Confinement**

14           "The Constitution 'does not mandate comfortable prisons.'" Farmer, 511 U.S. at

15    832 (quoting Rhodes, 452 U.S. at 349); see also Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir.

16    2002); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), abrogated on other grounds by

17    Sandin v. Conner, 515 U.S. 472 (1995). Conditions of confinement may, consistent with the

18    Constitution, be restrictive and harsh. See Rhodes, 452 U.S. at 347; Morgan v. Morgensen, 465

19    F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v.

20    Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide

21    prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint,

22    801 F.2d at 1107; see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Wright v.

23    Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

24           When determining whether the conditions of confinement meet the objective

25    prong of the Eighth Amendment analysis, the court must analyze each condition separately to

26    determine whether that specific condition violates the Eighth Amendment. See Toussaint, 801

27    F.2d at 1107; Wright, 642 F.2d at 1133. "Some conditions of confinement may establish an

28    Eighth Amendment violation 'in combination' when each would not do so alone, but only when

1   they have a mutually enforcing effect that produces the deprivation of a single, identifiable human

2   need such as food, warmth, or exercise – for example, a low cell temperature at night combined

3   with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Thomas v.

4   Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); Osolinski, 92 F.3d at 938-39; *Toussaint*, 801 F.2d at

5   1107; Wright, 642 F.2d at 1133. When considering the conditions of confinement, the court

6   should also consider the amount of time to which the prisoner was subjected to the condition. See

7   Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir.

8   2005).

9           Plaintiff's Complaint alleges the following specific conditions violated the Eighth

10  Amendment: (1) inadequate access to cleaning supplies; (2) inadequate social distancing

11  protocols; (3) inadequate ventilation and access to blankets; and (4) inadequate hot water in the

12  showers.

13                          1.      Access to Cleaning Supplies

14          The Ninth Circuit has held that where the denial of cleaning supplies does not lead

15  to unsanitary conditions that "were objectively sufficiently serious to rise to the level of an Eighth

16  Amendment violation" a qualifying claim does not exist.  Maultsby v. Rios, No. 1:12-cv-00033-

17  AWI-DLB-PC, 2013 WL 551764 ("Plaintiff's claim of inhumane conditions of confinement is

18  based on his allegation that he was not given sanitation supplies, despite asking Defendant

19  Morgan for supplies for three weeks.").  Here, Plaintiff's allegation of being restricted from

20  accessing cleaning supplies does not rise to the level of an Eighth Amendment violation.  The

21  Complaint states Plaintiff asked for cleaning supplies on November 13, 2020, and on November

22  14, 2020.  See ECF No. 1, pg. 8.  Thus, Plaintiff was only restricted from accessing cleaning

23  supplies for two days.  While the Complaint alleges Plaintiff's housing unit experienced a Covid-

24  19 outbreak "within weeks" of the event, the Court does not find Plaintiff sufficiently alleged

25  facts demonstrating the outbreak was caused from being restricted from cleaning supplies for two

26  days.  Aside from the Covid-19 outbreak, the Court does not find Plaintiff demonstrated facts that

27  the restriction lead to other unsanitary conditions that give rise to an Eighth Amendment

28  violation. For these reasons, Plaintiff will be provided with an opportunity to amend.

2.      Social Distancing Protocols

In consideration of the Covid-19 pandemic, several district courts have concluded that Covid may pose a substantial risk of serious harm, but to bring a cognizable Eighth Amendment, conditions-of-confinement claim, a plaintiff must allege how the Covid conditions at the prison personally placed the plaintiff at risk.  Johnston v. CDCR Health Care, No. 1:21-cv-01322-NONE-BAM (PC), 2021 WL 5921461, at *5 (E.D. Cal. Dec. 15, 2021), report and recommendation adopted, 2022 WL 183432 (collecting cases concluding that Covid presents a substantial risk of serious harm to prisoners); Benitez v. Sierra Conservation Ctr., Warden, No. 1:21-cv-00370-BAM, 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021), report and recommendation adopted, 2021 WL 4593841 (E.D. Cal. Oct. 6, 2021) ("However, in order to state a cognizable Eighth Amendment claim against the warden and the Health Executive Officer, Plaintiff must provide more than generalized allegations that the warden and the Health Executive Officer have not done enough regarding control the spread.").

The CDC guidelines and prison policy are neither determinative of constitutional requirements nor whether an Eighth Amendment violation has occurred.  See Sandford v. Eaton, No. 1:20-cv-00792-NONE-BAM, 2022 WL 168530, at *2, (E.D. Cal. Jan. 19, 2022); see also Ahlman v. Barnes, 445 F. Supp. 3d 671, 691 (C.D. Cal. 2020).  However, they are relevant benchmark to assess a prison official's efforts to combat Covid.  Id.  "In assessing a conditions-of-confinement claim alleging a failure to implement appropriate measures in a prison to combat Covid, the 'key inquiry is not whether [the] [d]efendant perfectly responded, complied with every CDC guideline, or whether the efforts ultimately averted the risk; instead, the key inquiry is whether [the] [d]efendant responded reasonably to the risk." Peyton v. Cates, No. 1:22-cv-00151-JLT-EPC (PC), 2022 WL 1430752, at *5 (E.D. Cal. May 5, 2022) (quoting Martinez v. Sherman, No. 1:21-cv-01319-BAM, 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022)).

Claim V of Plaintiff's Complaint alleges that Defendant, Warden Matteson, implemented eight-man cohorts that allowed inmates to "live safely without masks."  ECF No. 1. pg. 10.  Plaintiff alleges that on November 6, 2020, a transfer inmate from Folsom State Prison was placed in Plaintiff's cohort "without proper quarantine procedures required per CDC

1   guidelines."  Id.  On December 25, 2020, and January 4, 2021, two inmates from the Covid unit

2   of the prison were moved into Plaintiff's cohort.  Id.  Plaintiff asserts that the failure to quarantine

3   or mandating the inmates proceed through a "decontamination process" violated Plaintiff's Eighth

4   Amendment rights, resulting in Plaintiff testing positive for Covid-19 on January 5, 2021.  Id. pg.

5   11.

6            Plaintiff's claim satisfies the objective prong.  Plaintiff sufficiently alleged that

7   they were personally at risk of serious harm because Covid-19 infected inmates were transferred

8   into Plaintiff's specific cohort.  See Johnston, 2021 WL 5921461, at *5 (finding that plaintiff

9   "failed to satisfy the objective prong" where the plaintiff failed to link their contraction of Covid-

10  19 with 'any individual that have Covid 19 with whom Plaintiff was in contact or that any

11  circumstance was an extreme deprivation.'); see also Peyton, 2022 WL 1430752, at *5

12  (concluding that plaintiff failed "to offer specific facts to support his allegation that 'he was

13  surrounded by severely ill inmates', such as that he was housed with ill inmates, that he was

14  forced to be physically near the ill inmates elsewhere in the prison, or that he contracted Covid as

15  a result of the ill inmates being transferred to his prison.") (citations omitted).

16           In consideration of the subjective prong, Plaintiff fails to allege sufficient facts to

17  satisfy this prong, that Defendant Matteson acted with deliberate indifference by disregarding a

18  serious risk to Plaintiff's health or safety.  Although the Complaint generally alleges that

19  Defendant Matteson formed cohorts and allowed transfers of infectious inmates into the cohorts,

20  Plaintiff "fails to specify any Covid policy that was deficient, what policy should have been

21  implemented, and how the failure to follow a policy led to a constitutional violation."  Id. (citing

22  McKissick v. Gastelo, No. 2:21-cv-01945-VAP, 2021 WL 2895679, at *5 (C.D. Cal. July 9,

23  2021) ("However, to state a cognizable Eighth Amendment claim, Plaintiff must provide more

24  than generalized allegations that Defendants have not done enough to enforce six-feet social and

25  living distancing, or provided sufficient cleaning supplies, in order to control the spread of Covid-

26  19.").

27  / / /

28  / / /

1    Further, Plaintiff only asserted generalized allegations that Defendant Matteson,

2    being the Warden, refused to transfer infected inmates back into the Covid unit. See ECF No. 1,

3    pg. 11.  As such, these allegations are insufficient to show that Defendant Matteson knew of and

4    disregarded an excessive risk to Plaintiff's health. See Blackwell v. Covello, No. 2:20-cv-1755

5    DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) ("However, in order to state a

6    cognizable Eighth Amendment claim against the warden plaintiff must provide more than

7    generalized allegations that the warden has not done enough to control the spread.").  For this

8    reason, and the reasons outlined above, Plaintiff has not stated a cognizable Eighth Amendment

9    claim regarding the Covid-19 protocols.  Plaintiff will have an opportunity to amend.

10                      3.      Temperature and Blankets

11                  "The Eighth Amendment guarantees adequate heating." Keenan v. Hall, 83 F.3d

12   1083, 1091 (9th Cir. 1996) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)),

13   amended by 135 F.3d 1318 (9th Cir. 1998); see also Graves v. Arpaio, 623 F.3d 1043, 1049 (9th

14   Cir. 2010) (per curiam) (noting the Eighth Amendment requires adequate heating, but not

15   necessarily a "comfortable" temperature); Johnson v. Lewis, 217 F.3d 726, 732 (9th Cir. 2000)

16   (exposure to excessive heat). "One measure of an inadequate, as opposed to merely

17   uncomfortable, temperature is that it poses 'a substantial risk of serious harm.'" Graves, 623 F.3d

18   at 1049 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  "Inadequate 'ventilation and air

19   flow' violates the Eighth Amendment if it 'undermines the health of inmates and the sanitation of

20   the penitentiary.'" Keenan, 83 F.3d at 1090 (9th Cir. 1996) (quoting Hoptowit v. Spellman, 753

21   F.2d 779, 784 (9th Cir. 1985)), amended by 135 F.3d 1318 (9th Cir. 1998).

22                  In Plaintiff's Claim V, Plaintiff contends that, while recovering from Covid-19 in

23   the Covid-19 housing unit, Plaintiff was placed under a HVAC unit.  ECF No. 1, pgs. 11-12.

24   Further, Plaintiff alleges the night temperatures dropped to 57 degrees Fahrenheit at night, and

25   that two blankets were insufficient.  Id. pg. 12.  Plaintiff claims to have raised the issue with

26   Defendant, Sergeant Muhammed, who refused to assist the situation.  Id.  The harm Plaintiff

27   alleges to have suffered was shivering and shaking, four nights of sleep deprivation, and

28   deterioration of mental health.  Id.  This Court finds Plaintiff asserted a cognizable claim under

the Eighth Amendment.  While Plaintiff only suffered such conditions for four nights, the combination of low temperatures and inadequate issuance of blankets, the objective prong is satisfied.  Thus, Plaintiff stated a cognizable Eighth Amendment claim with regard to inadequate temperatures and blankets.

4.      Shower Temperature

Generally, a short-term failure to provide hot water does not violate the Eight Amendment and only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment.  See Adcock v. Burton, No. 2:20-CV-0035 KJN P, 2020 WL 3073334, at *3 (E.D. Cal. June 10, 2020) (citing Lopez v. Robinson, 914 F.2d 486, 492 (4th Cir. 1990) (finding no clearly established, sufficiently contoured, right to hot showers in prison)).  To state a cognizable § 1983 claim, a plaintiff must allege facts to suggest "that the lack of hot water was an extreme deprivation, that [d]efendant was even aware of the lack of hot water, or how the lack of hot water resulted in actual injuries to [p]laintiff."  Klingfus v. Davey, No. 1:15-cv-01808-MJS-PC, 2016 WL 8731773, at *3.

With respect to Plaintiff's allegation of inadequate water temperature, Plaintiff fails to state a claim upon which relief can be granted. Plaintiff alleges that while receiving medical treatment for Covid-19, the showers only had enough hot water for two people.  ECF No. 1, pg. 12.  However, Plaintiff's Complaint fails to include any alleged facts suggesting the lack of hot water was an extreme deprivation.  There are no facts setting forth the duration to which Plaintiff experienced such conditions.  Additionally, Plaintiff does not provide which, if any, defendant was made aware of the lack of hot water, nor demonstrated how the lack of hot water resulted in actual injuries to Plaintiff.  As such, Plaintiff will have an opportunity to amend.

**G.      Individual Defendants**

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform

19

an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey, 673 F.2d at 268. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

/ / /

/ / /

/ / /

20

Plaintiff names eleven individuals as defendants: (1) G. Matteson, Warden; (2) T. Tyler, Chief Deputy Warden; (3) Popovits, Chief Deputy Warden; (4) Martinez, Lieutenant; (5) S. Deberry, Correctional Officer; (6) Stewart, Correctional Officer; (7) Peterson, Correctional Officer; (8) Buckner, Correctional Officer; (9) Khim, Correctional Officer; (10) Burns, Correctional Officer; and (11) Muhammed, Sergeant.  This Court finds Plaintiff adequately asserted a causal link between the following defendants and the alleged constitutional violations: S. Deberry; Stewart; Peterson; Buckner; Khim; and Muhammed.  However, the Court does not find Plaintiff demonstrated a causal link for defendants: Matteson, Tyler, Popovits, Martinez, and Burns.  The Court's findings are explained below.

### 1.    Matteson

In Claim IV, Plaintiff alleges that the Warden, Defendant Matteson, rejected Plaintiff's staff complaint regarding inadequate access to cleaning supplies.  See ECF No. 1, pg. 9.  However, the rejection alone does not establish a constitutional violation.  Plaintiff will be provided an opportunity to amend to demonstrate a connection of Defendant Matteson's rejection and a constitutional violation.

In Claim V, Plaintiff alleged Defendant Matteson implemented cohorts for Covid-19 and allowed transfers of inmates to those cohorts.  See id. pgs. 10-13.  Plaintiff further alleges Defendant Matteson failed to move Plaintiff away from the HVAC unit while Plaintiff was recovering from Covid-19.  See id.  However, Plaintiff fails to allege how the policy implementations repudiates a constitutional right.  Additionally, Plaintiff fails to allege any facts that Defendant Matteson was informed of Plaintiff's housing conditions while recovering from Covid-19. This Court will provide Plaintiff with the opportunity to amend demonstrating a causal link to Defendant Matteson in both Claim IV and Claim V.

### 2.    Tyler, Popovits, Martinez, and Burns

In Plaintiff's Complaint, Plaintiff fails to assert any facts demonstrating a causal link to Defendants Tyler, Popovits, and Martinez.  Plaintiff only briefly mentions that these Defendants were made aware of Plaintiff's staff complaint regarding restricted access to the telephone.  See ECF No. 1, pg. 5.  However, Plaintiff failed to assert any facts to these

1   Defendants and the subsequent alleged constitutional violation.  Therefore, Plaintiff will be

2   provided an opportunity to amend their allegations to the actual involvement, if any, of

3   Defendants Tyler, Popovits, and Martinez in a claimed constitutional violation.

4   　　　　　Regarding Defendant Burns, the only facts Plaintiff asserts in connection to

5   Defendant Burns, is that when asked about the limited access to cleaning supplies, Defendant

6   Burns stated: "It's Buckner's trip . . . you know how it is." Id. at 9.  However, this is not a

7   sufficient factual allegation that Defendant Burns acts resulted in the alleged deprivation.  Thus,

8   Plaintiff will be provided an opportunity to amend demonstrating a causal link between the

9   alleged constitutional violation and Defendant Burns' actions.

10   　　　　　　　　3.　　　Deberry, Peterson, Buckner, and Khim

11   　　　　　The Court finds Plaintiff sufficiently plead facts connecting Defendants DeBerry,

12   Peterson, Buckner, and Khim to the alleged actions.  While Plaintiff demonstrates a causal link,

13   Plaintiff must address the inadequacies of the alleged constitutional violations as addressed

14   above.  As such, the Court will provide Plaintiff with the opportunity to amend.

15   　　　　　　　　4.　　　Muhammed

16   　　　　　The Court finds Plaintiff sufficiently plead facts demonstrating a causal link exists

17   between Defendant Muhammed and the asserted Eighth Amendment violation regarding

18   inadequate temperature and issuance of blankets.  See id. pgs. 11-12.  Therefore, Plaintiff has

19   stated a cognizable Eighth Amendment claim against Defendant Muhammed.

20

21   　　　　　　　　　　　**III.  CONCLUSION**

22   　　　　　Because it is possible that the deficiencies identified in this order may be cured by

23   amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d

24   1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an

25   amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258,

26   1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the

27   prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An

28   amended complaint must be complete in itself without reference to any prior pleading.  See id.

1        If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the

2    conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See

3    Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how

4    each named defendant is involved, and must set forth some affirmative link or connection

5    between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

6    164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

7        Because the complaint appears to otherwise state a cognizable claim, if no

8    amended complaint is filed within the time allowed therefor, the Court will issue findings and

9    recommendations that the claims identified herein as defective be dismissed, as well as such

10   further orders as are necessary for service of process as to the cognizable claims.

11       Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended

12   complaint within 30 days of the date of service of this order.

13

14   Dated:  July 24, 2023

15

16                                DENNIS M. COTA

                                     UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28