IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GILBERT MENDOZA, | No. 2:22-CV-1136-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| G. MATTESON, et al., | |
| Defendants. | |

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's first amended complaint. See ECF No. 12.

        The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the

complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff initiated this action with a pro se civil rights complaint. See ECF No. 1. On July 24, 2023, the Court issued an order addressing the sufficiency of Plaintiff's original complaint. See ECF No. 9. The Court determined that Plaintiff stated cognizable claims arising from inadequate temperatures in the prison cells as well as the lack of blankets. See id. Otherwise, the Court founds the original complaint defective as to all other claims presented. See id. Plaintiff was provided the opportunity to file a first amended complaint. See id. Plaintiff timely filed the currently pending first amended complaint on September 14, 2023. See ECF No. 12.

### B.  Plaintiff's Allegations

As with the original complaint, Plaintiff names the following as defendants, all of whom are alleged to be prison officials at California State Prison – Solano (SCP-Solano): (1) G. Matteson – Warden; (2) T. Tyler – Chief Deputy Warden; (3) Popovits – Acting Chief Deputy Warden; (4) Martinez – Correctional Lieutenant; (5) S. Deberry – Correctional Officer; (6) Stewart – Correctional Officer; (7) Peterson – Correctional Officer; (8) Buckner – Correctional Officer; (9) Khim – Correctional Officer; (10) Burns – Correctional Officer; (11) Muhammed – Correctional Sergeant. See ECF No. 12, pgs. 3-8.

///

///

///

According to Plaintiff, on April 13, 2020, Defendant Deberry denied Plaintiff his telephone privileges. See id. at 9.  Deberry claimed that it was under his discretion to limit phone access even when there were times available on the sign-up sheet. See id. Plaintiff was afraid to use his privileges because Deberry threatened disciplinary action, and Plaintiff did not want this to affect his eligibility for parole. See id. at 10.  Next, Plaintiff claims that, on December 16, 2020, Deberry refused to send Plaintiff's confidential mail addressed to State Senator Nancy Skinner because he claimed that he "didn't have to." Id.

Plaintiff next states that, on November 13, 2020, during the COVID-19 outbreak, Defendants Stewart and Peterson denied Plaintiff access to cleaning supplies per an order from Defendant Buckner. See id. at 10. Deberry is also alleged to have denied cleaning supplies. See id.  Plaintiff states that another correctional officer – Lopez – searched for cleaning supplies but couldn't find any because they had been hidden by other prison staff.  See id.  Plaintiff asked Defendants Khim and Stewart why Building 18 was denied cleaning supplies to which Stewart implied that it was due to the actions of one inmate housed in the same building.  See id.  Stewart further explained that access to cleaning supplies is a privilege that could be taken away. See id. at 10-11.  When Plaintiff asked whether officers were aware of the COVID-19 outbreak at the prison, they indicated that they were aware, but that inmates housed in Building 18 had to "find another way to clean." Id. at 11.

According to Plaintiff, there is a check-out-and-return policy for cleaning supplies where inmates can check out cleaning supplies by leaving their ID cards with the correctional officer, but these procedures were not followed.  See id. at 11. Plaintiff told his wife that the whole building was being punished for the actions of one inmate, who then sent a complaint to the Warden that went unanswered for two months. See id.  Defendant Tyler held an investigation that didn't result in any corrective measures, and Plaintiff ended up filing a grievance against Tyler. See id.  Plaintiff alleges that Defendant Matteson sided with Defendant Tyler, and on appeal the Chief of Appeals affirmed and "refused to correct the abuse of color of authority." Id. at 12.

///

Next, Plaintiff claims that from November 2020 through June 2022, during the ongoing COVID-19 pandemic, Plaintiff was denied his right to socially distance himself from others in his dormitory. See id. According to Plaintiff, the social distance standard of six feet was not followed. See id. In "addressing" the social distancing requirement, Plaintiff states that Defendant Matteson created "safe zones" consisting of eight-man "cohorts" which contained four two-man bunks placed three feet apart. Id. Plaintiff also states that, on November 6, 2020, Matteson allowed an inmate from Folsom State Prison, which Plaintiff states was "highly infected," to enter Plaintiff's "safe zone" without following the COVID-19 protocols set in place by the Centers for Disease Control and Prevention. See id. On December 25, 2020, another inmate was transferred from a COVID-19 quarantine unit while still exhibiting symptoms of COVID-19 and was assigned to an "out of bounds" bunk within three feet of Plaintiff. Id. On January 4, 2021, another inmate was transferred from the COVID-19 quarantine unit to Plaintiff's "safe zone." Id.

On January 5, 2021, Plaintiff tested positive for COVID-19. See id. Subsequently, he was moved to the COVID-19 quarantine unit where, according to Plaintiff, conditions were much worse than where he was previously housed. See id. at 13. He was surrounded by other COVID-infected inmates within two feet from his bunk bed. See id. There was also an HVAC unit right above Plaintiff's bunk bed that was blowing cold air on Plaintiff and Defendant Muhammed refused to turn it off when asked. See id. In addition, the showers for inmates only had enough hot water for two people to take showers before the hot water ran out. See id. Plaintiff states that he suffers side effects from COVID-19, which include an almost entire loss of smell and a partial loss of taste. See id. He also suffers from anxiety stemming from feeling helpless due to the prison's lack of care if another pandemic would arise. See id. at 14.

Plaintiff claims the foregoing facts give rise to the following legal claims: (1) denial of First Amendment right to communicate with people by telephone; (2) denial of First Amendment right to telephone privileges; (3) denial of First Amendment right to confidential mail; (4) denial of Eighth Amendment right to cleaning supplies; (5) denial of rights associated with inmate grievances. See id. at 14-18. Plaintiff also alleges that Defendants conspired with

4

each other to deny him his rights. See id. at 18-19. Finally, Plaintiff claims that Defendants Matteson and Tyler – the Warden and Acting Warden, respectively – are responsible for failing to reprimand subordinates and "turning a blind eye." Id. at 19.

## II. DISCUSSION

The Court finds that Plaintiff's first amended complaint states a cognizable First Amendment claim against Defendant Deberry who allegedly denied Plaintiff his right to send and receive mail and his right to telephone access. The Court also finds that Plaintiff's first amended complaint states cognizable Eighth Amendment conditions of confinement claims against Muhammad, Stewart, Peterson, Deberry, Khim, Tyler, and Matteson with respect to COVID-19 sanitation and implementation of the so-called "safe zone" policy.

Plaintiff has not, however, stated any cognizable claims arising under 42 U.S.C. § 1985(3) because the facts alleged fail to satisfy the elements of a conspiracy claim. Further, as discussed below, Plaintiff cannot state a stand-alone claim against any defendant arising from handling of the inmate appeals and grievance process.

### A. Grievance Process

Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967

(N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

Plaintiff asserts that due to an ineffective inmate grievance and appeals process, there was no means for an inmate to request any corrective measures to be taken in regard to checking out cleaning supplies. As explained above, such allegations as relating to the grievance procedures do not support a stand-alone due process claim. Hence, the claim is not cognizable.

**B.     Conspiracy**

42 U.S.C. § 1985(3) "provides a cause of action if two or more persons conspire to deprive an individual of his constitutional rights." See Pasadena Republican Club v. W. Just. Ctr., 985 F.3d 1161, 1171 (9th Cir. 2021), cert. denied, 142 S. Ct. 337 (2021) (citing Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971). To state a claim under 42 U.S.C. §1985(3), the complaint must allege: (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. See Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980). To deprive any person of the equal protection of the laws "[…] means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." See Griffin, 403 U.S. at 102.

Although Plaintiff states in his first amended complaint that Defendants conspired with each other to deny him rights (element 1), he does not specifically state which officers conspired against him. Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, Plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). This means that in addition to stating which officers conspired together,

Plaintiff must state facts showing how the officers conspired to deny Plaintiff's rights. Additionally, Plaintiff has not alleged that there was a conspiracy to deny him equal protection due to race, class-based, or invidious discrimination against Plaintiff (element 2). This is a necessary element of a conspiracy claim. Plaintiff will again be provided an opportunity to amend.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

///

///

///

///

7

1   Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a second amended
2   complaint within 30 days of the date of service of this order.

4   Dated: June 13, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE