IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MENDOZA, | No. 2:22-CV-1136-KJM-DMC-P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| G. MATTESON, et al., | |
| Defendants. | |

Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to sever and dismiss misjoined claims under Federal Rules of Civil Procedure 20(a) and 21. See ECF No. 20. Plaintiff has filed an opposition. See ECF No. 24. Defendants have filed a reply. See ECF No. 25. For the reasons discussed below, the Court finds that Defendants' motion should be granted in part and denied in part.

Federal Rule of Civil Procedure 18(a) limits the joinder of claims, whereas Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit. Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Rule 20(a)(2) states: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of

1

transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Courts have recognized that when multiple parties are named, the analysis under Rule 20 precedes that under Rule 18. See Herndon v. Mich. Dep't of Corr., 2021 WL 1559156 at *2 (W.D. Mich. April 12, 2021).

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . .
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

Id. (citing 7 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1655 (3d ed. 2001), quoted in Proctor v. Applegate, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and Garcia v. Munoz, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); see also United States v. Mississippi, 380 U.S. 128, 142–43 (1965)).

Permissive joinder under Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1997). The purpose of Rule 20 is to address the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Rule 20 sets forth two specific requirements for permissive joinder: "(1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties must arise in the action." Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980) (citing League to Save Lake Tahoe, 558 F.2d at 917).

As to the first requirement, courts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder. Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). "The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events' and have a 'very definite logical relationship.'" Hubbard v.

2

1  Hougland, 2010 WL 1416691, at *7 (E.D. Cal. Apr. 5, 2010) (quoting Bautista v. Los Angeles
2  County, 216 F.3d 837, 842-843 (9th Cir. 2000)).  Additionally, "the mere fact that all [of a
3  plaintiff's] claims arise under the same general law does not necessarily establish a common
4  question of law or fact."  Coughlin, 130 F.3d at 1351.

5        As to the second requirement, commonality under Rule 20 is not a particularly
6  stringent test.  See Johnson v. Shaffer, 2013 WL 140115, at *2 (E.D. Cal. Jan. 10, 2013) (citing
7  Bridgeport Music, Inc. v. 11 C Music, 202 F.R.D. 229, 231 (M.D. Tenn. 2001)).  The Rule
8  requires only a single common question, not multiple common questions.  Fed. R. Civ. P. 20
9  ("any question of law or fact common to . . .").  "The common question may be one of fact or of
10 law and need not be the most important or predominant issue in the litigation."  Johnson, 2013
11 WL 140115, at *2 (citing Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)).
12 And even if a court finds that the requirements have been met, "a district court must examine
13 whether permissive joinder would 'comport with principles of fundamental fairness' or would
14 result in prejudice to either side."  Coleman v. Quaker Oats Company, 232 F.3d 1271, 1296 (9th
15 Cir. 2000) (citing Desert Empire Bank, 623 F.2d at 1375 (finding that the district court did not
16 abuse its discretion when it severed certain plaintiff's claims without finding improper joinder)).

17       Under Rule 20(b), the district court may sever claims or parties in order to avoid
18 prejudice.  Fed. R. Civ. P. 20(b).  Courts have also exercised their discretion to sever where
19 "[i]nstead of making the resolution of [the] case more efficient . . . joinder would instead confuse
20 and complicate the issues for all parties involved."  Rodriguez v. Tilton, 2013 WL 1163796, at *6
21 (E.D. Cal. Mar. 20, 2013) (quoting Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1088 (C.D.
22 Cal. 2002) (finding that even where Rule 20 requirements for joinder are satisfied, the court may
23 exercise its discretion "to sever for at least two reasons: (1) to prevent jury confusion and judicial
24 inefficiency, and (2) to prevent unfair prejudice to the [defendants]")) (citing Coleman, 232 F.3d
25 at 1350).
26 / / /
27 / / /
28 / / /

3

If, however, the requirements for permissive joinder are not satisfied, courts may look to Rule 21. Coughlin, 130 F.3d at 1350. Under Rule 21, where a court finds misjoinder, it may "drop a party" or "sever any claim against a party" as it considers just, but it may not dismiss the entire action. Fed. R. Civ. P. 21. In other words, where there is misjoinder, a court "has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately.'" DirecTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir. 2006); see, e.g., Gilmore v. Bauder, No. 1:19-CV-01229-NONE-SKO, 2021 WL 634731 at *3 (E.D. Cal. Feb. 18, 2021) (dismissing severed claims without prejudice); see also Harrison v. Linde, No. 2:12-CV-2000 KJM CKD, 2013 WL 3872833 at *1 (E.D. Cal. July 25, 2013) (directing the clerk of court to assign a new case number for the severed claims). In determining which of the two remedial options should be applied, the court should consider the following factors, inter alia: (1) the relevant statute of limitations; (2) where the parties are in the discovery process; and (3) the past and future expenditures of both the court and the parties. See Robinson v. Geithner, No. 1:05-CV-01258-LJO-SKO, 2011 WL 66158 at *10 (E.D. Cal. Jan. 10, 2011). The remedial option the court chooses could have critical effects.

For example, "[w]hen a court 'drops' a defendant under Rule 21, that defendant is dismissed from the case without prejudice." DirecTV, Inc., 467 F.3d at 845 (citing Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1068 (3d Cir. 1979)); see also Elmore v. Henderson, 227 F.3d 1009, 1011–12 (7th Cir. 2000) (Posner, J.). "When that occurs, the 'statute of limitations is not tolled' because we treat the initial complaint 'as if it never existed." DirecTV, Inc., 467 F.3d at 845 (citing Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005). However, "when a court 'severs' a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise. The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period." DirecTV, Inc., 467 F.3d at 845 (citing White v. ABCO Eng'g Corp., 199 F.3d 140, 145 n. 6 (3d Cir. 1999)); see also Jenkins v. Lares, No. 2:13-CV-2273-DB, 2017 WL 3381809 at *6-7 (E.D. Cal. Aug. 7, 2017).

///

Additionally, severance or dismissal of misjoined parties in cases brought by inmates under 28 U.S.C. § 1915(g) ensures that prisoners pay the required filing fees for each unrelated claim that should be brought in separate actions. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). The inmate plaintiff in George brought a 50-claim, 24-defendant lawsuit and sought one fee waiver for the entire case. Id. In severing the case, the Court of Appeals for the Seventh Circuit noted that the inmate "was trying not only to save money, but also to dodge [28 U.S.C. § 1915(g)]." Id. Thus, the rule requiring severance of unrelated claims against unrelated defendants "is not only intended to avoid confusion that arises out of bloated lawsuits, but also to prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act." Blair v. CDCR, et al., No. 1:14-cv-01156-LJO-SAB, 2016 WL 5660320, at *14 (E.D. Cal. Jul. 15, 2016), report and recommendation adopted by, No. 1:14-cv-01156-LJO-SAB, 2016 WL 5470190 (E.D. Cal. Sept. 28, 2016).

The actual severance of claims may be effectuated by assigning claims to case numbers. See Jenkins, 2017 WL 3381809 at *7. For example, in Jenkins the court severed the case into four separate actions, i.e., four separate claims. Id. The court assigned the case number of the original action to the plaintiff's first claim. Id. The court then directed the clerk of court to assign the three remaining claims to three different case numbers. Id.

## I. BACKGROUND

### A. **Procedural History**

Plaintiff initiated this action with a pro se civil rights complaint. See ECF No. 1. On July 24, 2023, the Court issued an order addressing the sufficiency of Plaintiff's original complaint. See ECF No. 9. The Court determined that Plaintiff stated cognizable claims arising from inadequate temperatures in the prison cells as well as the lack of blankets. See id. Otherwise, the Court founds the original complaint defective as to all other claims presented. See id. Plaintiff was provided the opportunity to file a first amended complaint. See id. Plaintiff timely filed the currently pending first amended complaint on September 14, 2023. See ECF No. 12.

///

1          The Court found that Plaintiff's first amended complaint states a cognizable First
2  Amendment claim and cognizable Eighth Amendment conditions-of-confinement claims but does
3  not state any cognizable conspiracy claim under 42 U.S.C. § 1985(3) because the facts alleged
4  were insufficient. See ECF No. 13.  The Court provided Plaintiff an opportunity to file a second
5  amended complaint addressing the deficiencies identified and advised that if no second amended
6  complaint was filed within 30 days the action would proceed on the cognizable claims while other
7  claims would be dismissed.  See id.  Because Plaintiff failed to file a second amended complaint
8  within the time permitted therefor, the Court recommended dismissal of all claims and defendants
9  except the cognizable claims identified in the Court's June 14, 2024, order.  See ECF No. 14.
10 The District Judge adopted the findings and recommendations in full.  See ECF No. 23.  Pursuant
11 to that order, this action proceeds on the following claims:  (1) Plaintiff's First Amendment claim
12 against Defendant Deberry, who allegedly denied Plaintiff his right to send and receive mail and
13 his right to telephone calls in 2020; and (2) Plaintiff's Eighth Amendment conditions-of-
14 confinement claims against Defendants Muhammed, Stewart, Peterson, Deberry, Khim, Tyler,
15 and Matteson with respect to COVID-19 sanitation and implementation of a "safe sone" policy
16 between 2020 and 2022.  See id.  All other claims and defendants have been dismissed.  See id.

17         On November 12, 2024, Defendants filed the pending motion to sever claims and
18 dismiss misjoined Defendants under Fed. R. Civ. P. 20(a)(2). See ECF No. 20. On February 24,
19 2025, Plaintiff filed an opposition to Defendants' motion. See ECF No. 24. On March 10, 2025,
20 Defendants filed a reply. See ECF No. 25.

21         **B.**     **Plaintiff's Allegations**

22         As with the original complaint, Plaintiff names the following as defendants, all of
23 whom are alleged to be prison officials at California State Prison – Solano (SCP-Solano): (1) G.
24 Matteson – Warden; (2) T. Tyler – Chief Deputy Warden; (3) Popovits – Acting Chief Deputy
25 Warden; (4) Martinez – Correctional Lieutenant; (5) S. Deberry – Correctional Officer; (6)
26 Stewart – Correctional Officer; (7) Peterson – Correctional Officer; (8) Buckner – Correctional
27 Officer; (9) Khim – Correctional Officer; (10) Burns – Correctional Officer; (11) Muhammed –
28 Correctional Sergeant. See ECF No. 12, pgs. 3-8.

6

1         According to Plaintiff, on April 13, 2020, Defendant Deberry denied Plaintiff his
2 telephone privileges. See id. at 9. Deberry claimed that it was under his discretion to limit phone
3 access even when there were times available on the sign-up sheet. See id. Plaintiff was afraid to
4 use his privileges because Deberry threatened disciplinary action, and Plaintiff did not want this
5 to affect his eligibility for parole. See id. at 10. Next, Plaintiff claims that, on December 16, 2020,
6 Deberry refused to send Plaintiff's confidential mail addressed to State Senator Nancy Skinner
7 because he claimed that he "didn't have to." Id.
8         Plaintiff next states that, on November 13, 2020, during the COVID-19 outbreak,
9 Defendants Stewart and Peterson denied Plaintiff access to cleaning supplies per an order from
10 correction officer Buckner. See id. at 10. Deberry is also alleged to have denied cleaning supplies.
11 See id. Plaintiff states that another correctional officer – Lopez – searched for cleaning supplies
12 but couldn't find any because they had been hidden by other prison staff. See id. Plaintiff asked
13 Defendants Khim and Stewart why Building 18 was denied cleaning supplies to which Stewart
14 implied that it was due to the actions of one inmate housed in the same building. See id. Stewart
15 further explained that access to cleaning supplies is a privilege that could be taken away. See id.
16 at 10-11. When Plaintiff asked whether officers were aware of the COVID-19 outbreak at the
17 prison, they indicated that they were aware, but that inmates housed in Building 18 had to "find
18 another way to clean." Id. at 11.
19         According to Plaintiff, there is a check-out-and-return policy for cleaning supplies
20 where inmates can check out cleaning supplies by leaving their ID cards with the correctional
21 officer, but these procedures were not followed. See id. at 11. Plaintiff told his wife that the whole
22 building was being punished for the actions of one inmate, who then sent a complaint to the
23 Warden that went unanswered for two months. See id. Defendant Tyler held an investigation that
24 didn't result in any corrective measures, and Plaintiff ended up filing a grievance against Tyler.
25 See id. Plaintiff alleges that Defendant Matteson sided with Defendant Tyler, and on appeal the
26 Chief of Appeals affirmed and "refused to correct the abuse of color of authority." Id. at 12.
27 / / /
28 / / /

Next, Plaintiff claims that from November 2020 through June 2022, during the ongoing COVID-19 pandemic, Plaintiff was denied his right to socially distance himself from others in his dormitory. See id. According to Plaintiff, the social distance standard of six feet was not followed. See id. In "addressing" the social distancing requirement, Plaintiff states that Defendant Matteson created "safe zones" consisting of eight-man "cohorts" which contained four two-man bunks placed three feet apart. Id. Plaintiff also states that, on November 6, 2020, Matteson allowed an inmate from Folsom State Prison, which Plaintiff states was "highly infected," to enter Plaintiff's "safe zone" without following the COVID-19 protocols set in place by the Centers for Disease Control and Prevention. See id. On December 25, 2020, another inmate was transferred from a COVID-19 quarantine unit while still exhibiting symptoms of COVID-19 and was assigned to an "out of bounds" bunk within three feet of Plaintiff. Id. On January 4, 2021, another inmate was transferred from the COVID-19 quarantine unit to Plaintiff's "safe zone." Id.

On January 5, 2021, Plaintiff tested positive for COVID-19. See id. Subsequently, he was moved to the COVID-19 quarantine unit where, according to Plaintiff, conditions were much worse than where he was previously housed. See id. at 13. He was surrounded by other COVID-infected inmates within two feet from his bunk bed. See id. Plaintiff alleges that his bunkmate's cough shook the bed, depriving him of sleep. See id. There was also an HVAC unit right above Plaintiff's bunk bed that was blowing cold air on Plaintiff and Defendant Muhammed refused to turn it off when asked. See id. Moreover, Plaintiff claims that two blankets were insufficient to keep him warm causing him to "shake and shiver" all night long. See id. Plaintiff further alleges that conditions stated above caused him suffering from four nights of sleep deprivation and feeling mentally distressed. See id. In addition, Plaintiff claims that the showers for inmates only had enough hot water for two people to take showers before the hot water ran out. See id. Plaintiff states that he suffers side effects from COVID-19, which include an almost entire loss of smell and a partial loss of taste. See id. He also suffers from anxiety stemming from feeling helpless due to the prison's lack of care if another pandemic would arise. See id. at 14.

///

8

## II. DISCUSSION

Consistent with the Court's prior orders, Plaintiff's first amended complaint proceeds on the following claims: (1) Plaintiff's First Amendment claim against Defendant Deberry, who allegedly denied Plaintiff his right to send and receive mail and his right to telephone calls in 2020; and (2) Plaintiff's Eighth Amendment conditions-of-confinement claims against Defendants Muhammed, Stewart, Peterson, Deberry, Khim, Tyler, and Matteson with respect to COVID-19 sanitation and implementation of a "safe zone" policy between 2020 and 2022.

In their motion to sever and dismiss misjoined Defendants, Defendants request that the Court sever Plaintiff's Eighth Amendment conditions-of-confinement claims, and dismiss Defendants Muhammad, Stewart, Peterson, Khim, Tyler, and Matteson from this action without prejudice to filing a new separate action as to his conditions-of-confinement claims. See ECF No. 20, pg. 1. For the reasons discussed below, the Court agrees with Defendants that, as currently pleaded, the first amended complaint contains misjoined claims. The Court will recommend, however, that the action be severed and that this case proceed on Plaintiff's First Amendment claims against Defendant Deberry and that Plaintiff's first amended complaint be filed as a separate action to proceed on Plaintiff's conditions-of-confinement claims.

At the outset, the Court addresses Plaintiff's apparent argument that the instant motion is untimely. In Plaintiff's opposition to Defendant's motion, Plaintiff argues that "[It] is [curious] why [Defendants] have not chosen to [file the motion to sever] at an earlier point in the proceedings." See ECF No. 24, pg. 3. Plaintiff also contends that because the Court didn't order claims severed upon initial screening, Plaintiff's claims should not be severed into separate lawsuits now. See id. In their reply, Defendants argues that the Court should grant Defendants' motion because it is filed timely. See ECF No. 25, pg. 1. Defendants claim that they "timely filed their motion as soon as practicable – before answering the FAC – on November 12, 2024." See id. at 2. The Court finds no evidence of gamesmanship or prejudice resulting from the timing of Defendants' pending motion.

///

The Court thus turns to consideration of the factors applicable to proper joinder of claims and parties.

### A. Whether the First Amendment Claim and the Eighth Amendment Claims relate to or arise out of the Same Transaction or Occurrence

Defendants move to sever Plaintiff's Eighth Amendment conditions-of-confinement claims from Plaintiff's First Amendment claim by arguing that Plaintiff's claims do not satisfy the requirements for permissive joinder. See ECF No. 20-1, pg. 4. Defendants argue that Plaintiff's April 13, 2020, First Amendment mail and phone call claims against Defendant Deberry do not arise out of the same transaction or occurrence as his Eighth Amendment COVID-19 conditions-of-confinement claims involving Defendants Muhammad, Stewart, Peterson, Deberry, Khim, Tyler, and Matteson. See id. Because Plaintiff's Eighth Amendment claim arose during the period between November 2020 to June 2022, Defendants contend that Plaintiff's First Amendment claim occurred at least seven months before his Eighth Amendment claim. See id. Plaintiff opposes the argument by saying that all Defendants are properly joined because the occurrence of their course of actions occurred during the "COVID-19" period. See ECF No. 24, pg. 3.

The Court agrees with Defendants' contention on this point. Plaintiff's claim against Deberry relates to the alleged occurrence of Plaintiff being denied of his right to use the telephone and receive and send mail. Conversely, Plaintiff's claims against Defendants Muhammed, Stewart, Peterson, Deberry, Khim, Tyler, and Matteson relate to multiple occurrences of Defendants allegedly refusing to provide Plaintiff with access to cleaning supplies. Although those incidents happened roughly during the same "COVID-19" period, which expands over three years, that doesn't necessarily mean Plaintiff's claims relate to or arise out of the same transaction or occurrence. Moreover, aside from the time link, Plaintiff does not provide any other arguments establishing a connection between the two sets of claims. Therefore, the Court finds that Plaintiff's First Amendment claim against Deberry and Plaintiff's Eighth Amendment claims against Defendants Muhammed, Stewart, Peterson, Deberry, Khim, Tyler, and Matteson are not related to—nor do they arise from—the same transaction or occurrence.

      **B.**    <u>**Whether there is a Question of Law or Fact Common to All the Parties Exists**</u>

      Defendants argue that Plaintiff's First Amendment claim rests upon entirely separate factual allegations than his Eighth Amendment claims, and that the claims rest on disparate legal theories. <u>See</u> ECF No. 20-1, pg. 5. The Court agrees.  The allegation of violation of Plaintiff's First Amendment rights against Defendant Deberry and the allegation of Eighth Amendment violations against Defendants Muhammed, Stewart, Peterson, Deberry, Khim, Tyler, and Matterson involve completely different legal standards and will be resolved upon completely different sets of facts.

### III.  CONCLUSION

      Based on the foregoing, the undersigned recommends as follows:

      1.    Defendants' motion to sever and dismiss misjoined claims and Defendants, ECF No. 20, be GRANTED in part and DENIED in part, as explained above.

      2.    This action should proceed on Plaintiff's First Amendment claims against Defendant Deberry.

      3.    Defendant Deberry should be directed to file an answer in this case as to Plaintiff's First Amendment claims.

      4.    The Court should direct that Plaintiff's first amended complaint be filed as a new separate action, assigned to the same Magistrate Judge and District Judge, to proceed on Plaintiff's remaining Eighth Amendment conditions-of-confinement claims against Defendants Muhammed, Stewart, Peterson, Deberry, Khim, Tyler, and Matterson.

///
///
///
///
///
///
///

     5.     Defendants Muhammed, Stewart, Peterson, Deberry, Khim, Tyler, and Matterson should be directed to file an answer in the new action as to Plaintiff's conditions-of-confinement claims.

     These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 13, 2025

                                     DENNIS M. COTA
                                     UNITED STATES MAGISTRATE JUDGE